**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| Deborah Unruh, | * | |
| Plaintiff | * | |
| vs. | * | Case No.: 1:22-cv-01810-JMC |
| M.D. David Nizza, et al., | * | |
| Defendants | * | |

**MEMORANDUM OPINION AND ORDER REGARDING
PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANTS'
CONTRIBUTORY NEGLIGENCE AND RELATED DEFENSES**

I.      **Background**

This is a medical malpractice case in which Plaintiff, Deborah Unruh, alleges that Defendant, David Nizza, M.D., was negligent in failing to diagnose a fracture in her left foot when he interpreted an x-ray study done when she presented to the emergency department on July 2, 2020.  Instead, Plaintiff was incorrectly diagnosed with a foot sprain.[1]  (ECF No. 35-3). Plaintiff further alleges that had her fracture been diagnosed at that time, she would not have been discharged without an immobilizer such as a cast, and would not have suffered a subsequent displacement of the fracture which, in turn, necessitated surgery. (ECF No. 35 at 2).

By way of a defense, Defendant raises, *inter alia*, contributory negligence on the part of Plaintiff that Defendant argues should bar any recovery.  Specifically, Defendant argues that Plaintiff failed to follow the discharge instructions she received from the emergency department to "[c]all today to schedule a follow-up appointment with *Primary Physician* in 2-4 day(s) if

---

[1] Defendant does not deny that, in retrospect, the fracture was present on the x-ray.  (ECF No. 38 at 1).

not improved," and "[i]f your symptoms become worse or do not improve as expected and you

are unable to reach your health care provider, you should return to the Emergency Department."

(ECF No. 38 at 2; ECF No. 35-3).  Instead, notwithstanding worsening pain, Plaintiff did not

return for treatment until July 24, 2020, at which point the fracture was diagnosed as being

displaced on follow-up x-ray.  (ECF No. 38 at 5).  In short, Defendant argues that Plaintiff's

post-discharge failure to return for treatment sooner substantially contributed to the displacement

of her fracture.  *Id.*

Plaintiff has moved *in limine* to prevent Defendant from relying on her alleged

contributory negligence at trial, as described above.  (ECF No. 35).  Defendant has responded.

(ECF No. 38). The issues have been fully briefed and no hearing is necessary. *See* Loc. R. 105.6

(D. Md. 2021).  As set forth more fully below, Plaintiff's motion is GRANTED in part, and

DENIED in limited part.

## II.    Analysis

In the context of a medical malpractice case alleging contributory negligence on the part

of a patient for failing to follow discharge instructions, a defendant must show that, after

receiving treatment by a health care provider, the patient was given instructions by that provider,

and either did not follow, or unreasonably delayed in following those instructions. *Barbosa v.

Osbourne*, 237 Md. App. 1, 10 (2018).  The parties acknowledge however that such a failure is

only contributorily negligent where a patient is "aware of or should have appreciated the risks

involved and then failed to exercise reasonable and ordinary care for his own safety." *Id.*  at 12

(internal quotations omitted).   In other words, Maryland law recognizes the disparity between a

physician's knowledge and that of a lay person on medical matters, and a patient "is not in a

position to diagnose his own ailment" such that a patient leaving the emergency department with

an incorrect diagnosis cannot be contributorily negligent absent an understanding of the actual
risk the patient faces by failing to abide by discharge instructions.  *Id*.

   *Barbosa* is instructive, involving a patient who presented at the emergency room with
abdominal pain. *Id.* at 3. Although, unlike the present case, the patient left without seeing a
doctor or receiving discharge instructions, a nurse at the hospital called the patient the following
day and left a message requesting that the patient "call back or return" to the hospital "for
questions, concerns[,] or if [his] condition change[d][,]" but did not suggest that the patient
"otherwise call back or return to the hospital." *Id*. at 4. The patient continued to experience
abdominal pain and returned to the emergency room eleven days later, at which time the patient
was injured during the surgery addressing his abdominal pain. *Id*. at 4–5. The Court determined
that the patient's decision to delay treatment by leaving the emergency room and not returning
for eleven days, and "failure to act upon the boilerplate telephone call . . . which did not advise
him to return to the hospital but only suggested he do so 'if [his] condition changes,'" was
insufficient evidence of contributory negligence to create a jury issue. *Id*. at 17.

   Defendant attempts to distinguish *Barbosa* by arguing that the instructions here to return
"[i]f your symptoms become worse or you do not improve as expected" and/or to "schedule a
follow-up with *Primary Physician* 2-4 day(s) from today if not improved" were substantively
different enough from a "boilerplate" telephone call so as to create a jury issue. (ECF No. 38 at
7). The Court does not agree.

   First, though not dispositive in the context of a "team" of health care providers rendering
multi-specialty care through an emergency department, these instructions were not given by Dr.
Nizza himself.  More fundamentally, these general instructions—which seem generic enough to
accompany any discharge from the emergency department—were given in the context of an

incorrect diagnosis of "foot sprain," and in no way suggest that the post discharge activity criticized here, walking and weight bearing, risked displacement and more extensive treatment to include surgery. In fact, the instructions do not caution that the patient should avoid walking and weight bearing, but merely suggest that the patient "limit the use of the affected body part." (ECF No. 38-1 at 2).  To the contrary, the instructions arguably implicitly encourage ambulation and weight bearing by stating "[y]ou have been given an orthopedic 'cast shoe'…to make walking more comfortable."  *Id*.

But even if the Court were to ignore the above, there is a more fundamental problem with Defendant's argument.  To establish contributory negligence, a defendant must show that any lack of care by the patient was a cause of the injury.  Maryland Civil Pattern Jury Instructions No. 27:6 (5th ed. 2023).  But Defendant's own expert is of the opinion that Plaintiff's fracture *was already displaced* at the time of her initial presentation such that her action or inaction post discharge is irrelevant.  (ECF No. 38, n. 1).  Erasing any doubt, he testified that Plaintiff's failure to follow up did not affect her outcome, as can be seen by the following exchange:

> Q:     Obviously, she did not come back to the ER in six days, but I take it from your opinions that really whether she followed up in those six days or not didn't affect her outcome in any way, correct?
>
> A:     Yes.  Given that she got to somebody within three weeks, I don't think that it really is a big issue whether she followed up in the ER.

(ECF No. 35 at 6).  As such, any lack of care on Plaintiff's part did not cause the injury of which Plaintiff complains if Defendant's expert is accurate.

And Plaintiff's expert does nothing to carry Defendant's causation burden.  Specifically, Plaintiff's expert cannot say when, between the moment of discharge and July 24, Plaintiff's fracture became displaced in that even very slight movement could have been the culprit, such as

a limited journey from Plaintiff's couch to the bathroom.  (ECF No. 38-3 at 2).  Further, he testified that, more likely than not, the fracture would have been displaced pretty quickly and early on if Plaintiff was putting weight on it and it was unprotected.  (ECF 35 at 5).  Such testimony is insufficient to carry Defendant's causation burden since it is, under the most generous interpretation, equally likely that the displacement happened early in the course (including within the 2–4-day follow-up timeframe set forth in the discharge instructions) as later in the course.  Just as a plaintiff seeking to establish causation in the case in chief could not prevail in such circumstances, a defendant bearing the burden of proof fails to carry that burden on contributory negligence where an outcome is (at best) equally likely to have already occurred before the timeframe for follow-up care contained in the discharge instructions expired.

Defendant raises one final issue regarding whether, even if Plaintiff's delay in returning for medical care does not bar recovery altogether, it should nonetheless be admissible to establish a failure to mitigate damages.  (ECF No. 38 at 8-9).  Specifically, Defendant argues that to the extent Plaintiff seeks recovery for pain and suffering during the time between her discharge on July 2 and her return for treatment on July 24, the issue of contributory negligence should go to the jury on that limited issue.  *Id*.  It is of course accurate that a patient's negligent act or failure to act that adds to the effect of an injury that has already occurred does not bar recovery, but may mitigate or lessen the amount of damages awarded.  Maryland Civil Pattern Jury Instructions No. 27:6 (5th ed. 2023).  To the extent Plaintiff seeks pain and suffering damages for this July 2-July 24 period, the Court agrees the jury may consider her failure to return sooner for treatment in mitigation of such damages.  But to be clear, in this limited context, it is not Plaintiff's failure to follow instructions, but her decision not to seek treatment for her increasing pain sooner that may serve to mitigate any claims for pain and suffering during this three-week window. Because the

Court has already determined that Defendant cannot establish contributory negligence in the first instance, Defendant may not describe Plaintiff's failure to return sooner as "contributory negligence," and the Court would not be inclined to give Maryland Civil Pattern Jury Instruction 27:6 for fear of confusing the jury by introducing concepts of contributory negligence where they are not supported.  Instead, to the extent Plaintiff intends on seeking recovery for the narrow window of time in question, the Court would be inclined to admit her delay to see pain relief as a "failure to mitigate" as expressed in Maryland Civil Pattern Jury Instruction 10:6.

### III.    Conclusion

Accordingly, Plaintiff's Motion (ECF No. 35) is GRANTED in part, except DENIED in limited part to the extent described immediately above.

_9/10/2024_                                                              _____/s/_____

Date                                                                         J. Mark Coulson
                                                                            United States Magistrate Judge